## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **LEONARD MARQUEZ, JR.,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| vs. | )     Case No. 1:09-cv-1125-RB-LFG |
| | ) |
| **DEPUTY SHERIFF KYLE HARTSOCK,** | ) |
| Bernalillo County Sheriff's Office, | ) |
| Individually, and | ) |
| | ) |
| **DEPUTY SHERIFF ELDER GUEVARA,** | ) |
| Bernalillo County Sheriff's Office, | ) |
| Individually, | ) |
| | ) |
|     **Defendants.** | ) |

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment Based on Qualified Immunity. (Doc. 38.) Having considered the parties' memoranda, the relevant case law, and otherwise being fully informed, the Court DENIES Defendants' motion, concluding that summary judgment is not appropriate because Defendants are not entitled to qualified immunity and there exist genuine issues of material fact to be decided by a jury.

### I.     FACTUAL BACKGROUND

At around two in the morning on November 28, 2006 in Albuquerque, New Mexico, Defendant Kyle Harstock, a Deputy Sheriff with the Bernalillo County Sheriff's Office, performed a traffic stop of a 1990 Brown Mercury four door sedan in which Plaintiff Leonard Marquez was riding as a passenger. Plaintiff Marquez was in possession of a .22 caliber handgun and was under the influence of heroin, cocaine, marijuana, and alcohol. Furthermore, for several weeks, Plaintiff had not been taking his prescription psychiatric medications, which prevent him from hearing voices.

When he approached the vehicle, Deputy Harstock noticed that Mr. Marquez, who was sitting in the rear seat, was not wearing his seat belt. Deputy Harstock intended to issue Mr. Marquez a ticket for not wearing his seatbelt and requested his identification. Mr. Marquez responded with a fake name and date of birth, and he indicated that he did not remember his social security number. Deputy Harstock then asked Mr. Marquez to exit the vehicle.

At about this time, Deputies Harlan and Elder Guevara, also of the Bernallillo County Sheriff's Office, arrived to assist Deputy Harstock. Deputy Harlan recognized Plaintiff as Mr. Leonard Marquez and informed the other deputies that Mr. Marquez had a warrant for his arrest. Mr. Marquez was aware of the warrant and acknowledges that to he failed to report to his parole officer. Based on the information from Deputy Harlan concerning the warrant, the officers decided to place Mr. Marquez under arrest. What happened next, however, is contested by the parties.

Plaintiff argues that the deputies exercised excessive force not justified under the circumstances. Plaintiff alleges that he was cooperating with the police, but the deputies struck him in the face, sprayed him with mace, and began beating him with their batons. Plaintiff asserts that he did nothing to justify this severe beating by the police. As a result of the beating, Plaintiff asserts that he suffered head trauma, lacerations to his face, arms, and legs, chemical burns to his face and arms, aggravation of a pre-existing back problem and headaches, and that he now suffers from post-traumatic stress disorder (PTSD).

Defendants, in contrast, argue that their use of force was wholly justified under the circumstances. Defendants assert that when they informed Mr. Marquez that he was under arrest and asked him to place his hands behind his head, he refused and placed his hands inside his pants, where he was carrying a .22 caliber handgun in his right front pants pocket. The deputies allege that they then ordered Mr. Marquez to the ground and to surrender his hands, but instead of complying,

he attempted to run away. Defendants assert that, at this point, all of the deputies forcefully attempted to place Plaintiff under arrest, but that Mr. Marquez continued to actively fight with them. Defendants assert that Mr. Marquez was so out of control, that his pants ripped off as they were trying to subdue him and he scraped his knees as he attempted to crawl under the Mercury.

Defendants admit that at some point they applied mace to Plaintiff's face; however, they assert that even this did not stop his resistance to the officers. Defendants allege that the confrontation continued around to the left side of the vehicle, and Mr. Marquez eventually grabbed hold of the steering wheel. The officers assert that they ordered him to release the steering wheel, that Plaintiff refused, and the officers delivered a baton strike to his upper left arm. Defendants claim that Mr. Marquez then let go of the steering wheel, and everyone fell to the ground; still, Plaintiff kept his hands tucked underneath his body and refused to show them to the deputies. Accordingly, two more baton strikes were administered to Mr. Marquez' upper left thigh. Defendants allege that Plaintiff then extended his left arm, but not his right, and another baton blow was delivered to his upper, left arm. At this point, Defendants assert that Mr. Marquez finally surrendered his right arm, and he was placed in handcuffs.

In sum, the parties dispute the following facts: (1) whether Plaintiff initially resisted arrest and tried to run away from the deputies, provoking their use of force, or whether it was the deputies who initiated the violent confrontation by striking Plaintiff in the face and macing him when the learned of the warrant; (2) whether Plaintiff actively resisted arrest, refusing to comply with the deputies' commands, or whether Mr. Marquez was merely trying to protect himself from the deputies' blows and to crawl underneath the car to escape the beating; and (3) whether Plaintiff's injuries were *de minimis*, or whether they constitute some form of actual physical or emotional injury.

## II. PROCEDURAL HISTORY

Plaintiff Leonard G. Marquez, Jr. filed a Complaint in this matter on November 27, 2009. (Doc. 1.) A jury trial is scheduled for May 31, 2011. (Doc. 27.) Defendants, Deputy Sheriff Kyle Hartsock and Deputy Sheriff Elder Guevara of the Bernalillo County Sheriff's Office, filed a Motion for Summary Judgement Based on Qualified Immunity on December 13, 2011. (Doc. 38.) Defendants argue that they are entitled to qualified immunity on Plaintiff's Section 1983 claims because Plaintiff Marquez cannot present sufficient evidence on summary judgment to show that Defendants violated clearly established Fourth Amendment law prohibiting the use of excessive force during his seizure and arrest. On December 29, 2010, Plaintiff filed a Response to Defendants' Motion for Summary Judgment arguing that Defendants are not entitled to qualified immunity, and that summary judgment is inappropriate because there exist genuine issues of material fact that should be determined by a jury, not the Court. (Doc. 42.) Defendants filed a Reply on January 18, 2011, arguing that Plaintiff failed to demonstrate a genuine issue of material fact in his Response, and therefore, Defendants are entitled to judgment as a matter of law. (Doc. 45.)

## III. LEGAL STANDARD

In their Motion for Summary Judgment, Defendants assert they are entitled to qualified immunity from Plaintiff's claims. "Once a defendant pleads qualified immunity, the plaintiff initially bears a heavy two-part burden." *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). In the case at hand, Plaintiff therefore has the initial burden to demonstrate (1) that Defendants' actions violated a constitutional right, and (2) that the constitutional right was clearly established at the time of the incident. *Id*.

> In resolving questions of qualified immunity, courts are required to resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?

4

> This must be the initial inquiry." If, and only if, the court finds a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case."

*Scott v. Harris*, 550 U.S. 372, 377 (2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (internal citation omitted).[1] "If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity." *Albright*, 51 F.3d at 1535. "Only if the plaintiff succeeds in carrying his two-part burden, does the burden shift to the defendant" to show that there are no genuine issues of material fact and that he is entitled to a judgment as a matter of law. *Id*. Thus, if the plaintiff meets his initial two-part burden, the defendant must then overcome the normal summary judgment standard—i.e., the standard applied when qualified immunity is not raised. *See Woodward v. City of Worland*, 977 F.2d 1392, 1396–97 (10th Cir. 1992).

Under the normal standard, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if under the substantive law it could have an effect on the outcome of the lawsuit. An issue is 'genuine' if 'a rational jury could find in favor of the nonmoving party on the evidence presented.' " *Adams v. Am. Guarantee and Liab. Ins. Co.*, 233 F.3d 1242, 1246 (quoting *Equal Employment Opportunity Comm'n v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir.2000). The trial court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the non-moving party." *Simms v. Oklahoma ex rel. Dept's of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The movants, Defendants Hartsock and Guevara, carry the initial burden of showing that no

---

1. Of note, while the plaintiff still carries a heavy two-part burden, the Supreme Court recently concluded that courts have some flexibility in the order in which these issues are decided: "On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. 223, 233 (2009).

5

genuine issue of material fact exists. *Adams*, 233 F.3d at 1246; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant meets this initial burden, then the burden shifts to the non-moving party, Plaintiff Marquez, to find sufficient evidence that would warrant submission of the case to a trier of fact. *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992).

### IV.     ANALYSIS

#### A.     Constitutional Violation

"The first step in assessing the constitutionality of [Defendants'] actions is to determine the relevant facts." *Scott*, 550 U.S. at 378. At the motion for summary judgment stage, it is quite common for the parties' views of the relevant facts to diverge significantly; however, the Court is required to view the facts in the light most favorable to the non-movant, which "usually means adopting . . . the plaintiff's version of the facts." *Id*. Sometimes, however, where the record on summary judgment is so devoid of any evidence to support the non-moving party's version of the case, such that no rational trier of fact could side with the non-moving party, the court must adopt the movant's version. *Id*. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

In Defendants' Reply in Support of Their Motion for Summary Judgment, Deputies Hartsock and Guevara argue that, with regard to the factual issue of whether their actions caused any injuries to Mr. Marquez, "Plaintiff's version of events is so utterly discredited by the photographs in the record that no reasonable jury could believe him." (Doc. 45.) Instead, Defendants urge the Court

to view the facts as depicted by the photographs. The one photograph (Doc. 38-4) presented to the Court,[2] however, does not blatantly contradict Plaintiff's version of events or his allegations of serious injury. Although Mr. Marquez does not look severely injured in the photograph, there does appear to be some puffiness under his eyes, some possible scratches, some redness, possible swelling in his face, and a red nose. Accordingly, the Court cannot say that the record is so devoid of evidence that no rational trier of fact could side with Plaintiff. Additionally, the photograph does not conclusively demonstrate that Mr. Marquez did not have injuries on other parts of his head or body, as the photograph only shows the front of Plaintiff's face. When presented with the photograph labeled "Exhibit D" during his deposition, Plaintiff stated that he observed a scratch under his right eye, that his face was swollen, and that there was some puffiness under his left eye. Plaintiff asserted that this puffiness was likely caused by the deputies when they socked him in the face. (Doc. 42-1 at 7.)

As Plaintiff's assessment of the photograph (Exhibit D) and his injuries is not blatantly contradicted by the record, and because it is possible that Plaintiff sustained injuries not visible in the photograph presented to the Court (Doc. 38-4, Exhibit E), the Court cannot conclude that Plaintiff's version of events is so blatantly contradicted by the record that no rational trier of fact could believe it. In *Scott*, 550 U.S. at 379, the Supreme Court rejected the plaintiff's version of the facts because the record contained a videotape that clearly contradicted the plaintiff's version of the facts. As the Supreme Court noted, based on the plaintiff's version of events, one might get the impression that the plaintiff, "rather than fleeing from police, was attempting to pass his driving

---

2. Both parties refer to a photograph labeled as "Exhibit D" to Plaintiff Marquez' Deposition; however, no such photograph was presented to the Court. The only photograph presented to the Court is the one labeled "Exhibit E" to Marquez' Deposition. (Doc. 38-4.) The Court cannot consider the other photographs if they are not part of the record on summary judgment.

test." *Id*. The video, however, showed a "Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury." *Id*. at 380. In these circumstances, the trial court must view the facts as depicted by the evidence, rather than by the plaintiff. In the case at hand, however, the photograph of Mr. Marquez is inconclusive, not clearly supporting or blatantly contradicting Plaintiff's version of the facts. *See York v. City of Las Cruces*, 523 F.3d 1205 (10th Cir. 2008) ("the police officers overstate the relevance of *Scott*"). A jury could certainly find Plaintiff's testimony not credible and conclude that the puffiness under his eyes was due to a lack of sleep or other factors, such as his drinking or drug use; however, these are factual determinations to be made by a jury, not the Court. *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992) ("Courts may not resolve disputed questions of material fact in order to grant summary judgment."). Accordingly, for purposes of deciding Defendants' Motion for Summary Judgment Based on Qualified Immunity, the Court must accept Plaintiff's version of events, as not "blatantly contradicted" by the record. *Scott*, 550 U.S. at 378–80.

Applying these facts to the relevant constitutional law, it appears that Plaintiff has indeed shown a constitutional violation for summary judgment purposes. Plaintiff alleges that he complied with the deputies' commands, that he did not do anything that would have justified the severe beating he received, that he did not attempt to flee from the officers, that he attempted to crawl underneath the car to escape the deputies' blows only after the beating started, not to flee, and that he received multiple injuries to his face, head, and other parts of his body. (Doc. 42 at 3–5.) These assertions are supported in the record by Mr. Marquez' Deposition. (Doc. 42-1.) While a jury might later find this testimony not credible, the Court is not permitted to make credibility determinations or to weigh competing evidence; in making its initial determination whether the deputies' alleged conduct violated a constitutional right, the Court can only view the evidence in the light most

favorable to Plaintiff.

Viewing the evidence in this light, for purposes of Defendants' Motion for Summary Judgment Based on Qualified Immunity, it appears there was a constitutional violation of Plaintiff's Fourth Amendment right to be free from unreasonable seizures. Excessive force claims against law enforcement officers during the seizure of a suspect are governed by the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id*. at 396 (quoting *Tennesee v. Garner*, 471 U.S. 1, 8 (1985)). An officer's duty to make lawful arrests "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. Thus, to demonstrate a Fourth Amendment violation, a plaintiff must show more than the use of force by law enforcement; rather, the force must have been objectively unreasonable in the circumstances: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397.

This reasonableness test defies "precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Nevertheless, in excessive forces cases, the Supreme Court has identified several factors the Court may consider in determining whether a particular application of force exceeded the bounds of reasonableness under the Fourth Amendment, "including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Ultimately, the Court's decision must take careful consideration of the facts and circumstances of the particular case as "judged from the perspective of a reasonable

officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396.  Additionally, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396–97; *see also Garner*, 471 U.S. at 8–9 (concluding that the question in Fourth Amendment cases is "whether the totality of the circumstances justified a particular sort of . . . seizure").

In the case at hand, Plaintiff's arrest was based primarily on a warrant that had been issued for a parole violation, but also the fact that Plaintiff was suspected of leading law enforcement on a high-speed chase a week prior to this seizure. (Doc. 42-1 at 3.)  While a parole violation may not present a very serious crime, leading police on a high-speed chase is, particularly given the public safety concerns.  Indeed, if the deputies had reasonable suspicion or probable cause to believe that Plaintiff had led officers on a high-speed chase a week before and was likely to attempt to flee again, they may have reasonably considered the application of additional force justified in order to rapidly seize Mr. Marquez and prevent a threat to the safety of the officers or public.  Yet, while Plaintiff admits to the warrant and parole violation, he denies having been in a high-speed chase, and Defendants have presented no evidence, other than their bare assertions, to support this allegation.  Thus, while the officers were clearly justified in arresting Mr. Marquez based on the parole violation, there is no evidence in the record to support Defendants' assertion that Plaintiff had fled from the police on a previous occasion or that they reasonably believed he was likely to do so on this occasion.

Defendants also assert that their actions were reasonable under the circumstances because Plaintiff was actively resisting arrest, because he was in possession of a handgun, because he had failed to take his prescription psychiatric medications, and because he was under the influence of

heroine, cocaine, marijuana, and alcohol; and therefore, he posed an immediate threat to the deputies. (Doc. 38 at 7–8.) Defendants have not shown, however, that any of this information was known to the officers on scene, from whose perspective we must analyze the reasonableness of the use of force; therefore, the Court cannot base its determination of reasonableness on these factors. Accordingly, with regard to the first two factors, the summary judgment record provides little support for a conclusion that, from the perspective of the officers at the scene, the crime was very serious or that Mr. Marquez posed an immediate threat.

Additionally, in his deposition, Plaintiff alleges that he attempted to comply with the deputies' commands, but the deputies hit him, sprayed him with mace, and continued to beat him even while he attempted to submit.  Although Mr. Marquez admits that he failed to comply with the deputies' commands to put his hands behind his back, he asserts that, in doing so, he was only attempting to cover his body from the blows and crawl underneath the car. (Doc. 42-1 at 3.)  These allegations indicate that the officers may have gone beyond the force reasonably necessary to promptly effectuate the seizure and protect the public, and their severe and continued application of force was merely malicious.  If this is the case, then Defendants clearly exceeded the amount of force permitted under the Fourth Amendment.

Finally, Defendants assert that Plaintiff failed to present sufficient evidence of an actual injury. (Doc. 38 at 8.)  In *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007), the Tenth Circuit stated that "a claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional."  In *Cortez*, the plaintiff presented evidence in the form of an affidavit that the handcuffs officers had placed on him left red marks for several days afterward; the Tenth Circuit concluded that this was "insufficient, as a matter of law, to support an excessive force claim." *Id*. This does not mean, however, that "proof of a physical injury manifested by visible cuts, bruises,

abrasions or scars" is an essential element of an excessive force claim. *Id*. at 1129 n. 24. "Rather 'the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property, and privacy interests—a person's sense of security and individual dignity.' " *Fisher v. City of Las Cruces*, 584 F.3d 888, 897–98 (10th Cir. 2009) (quoting *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1195 (10th Cir. 2001)).  Provided there is some proof of actual harm—be it physical or emotional—that is sufficient to support a claim for excessive force on a summary judgment motion for qualified immunity. *Id*. at 898.

In his Deposition, Plaintiff alleged the following injuries: that he was choked until he passed out (Marquez Dep. 48:3); that he was maced, suffered an asthma attack, and could not breath (*Id*. at 48:5); that he had pains in his shoulder, back, and head (*Id*. 50:2); that he had scratches and abrasions on his legs (*Id*. at 55:22, 57:17–58:22, 60:18–19); that his face was visibly swollen in a photograph taken at the hospital after his arrest (*Id*. at 56:4); and that his left eye was puffy from when the deputies hit him in the face during the seizure (*Id*. at 56:22–25).  The Emergency Center Log (Doc. 45-1) from the UNM Hospital where Plaintiff was taken after he was arrested indicates that Mr. Marquez was originally unresponsive, but "became alert with noxious stimuli (ammonia salts)"; that Mr. Marquez complained of pain in his back, elbow, stomach, and neck cramping; that he complained his bones hurt; but that there was "no gross trauma."  While this evidence does not conclusively demonstrate any severe and lasting injuries, it does tend to show that Mr. Marquez suffered injuries that were not de minimis as evidenced by his cuts, scrapes, scratches, puffiness under his eye, and possible swelling in his face.

Nevertheless, Defendants argue that the abrasions on his knees were self-inflicted and resulted from Plaintiff's attempts to crawl underneath the car. (Doc. 38 at 8.)  Still, this does not explain Plaintiff's other alleged injuries.  Furthermore, even if Plaintiff sustained these cuts and

12

scrapes while attempting to crawl underneath the car, if he did so to escape the deputies' blows after he had attempted to submit to the officers, then these injuries resulted from the Defendants' unlawful and excessive use of force in violation of the Fourth Amendment, not Plaintiff's attempt to flee.

In conclusion, based on the record, the Court concludes that, for purposes of this summary judgment motion for qualified immunity, Plaintiff has established a Fourth Amendment violation of his right to be free from the use of excessive force. Plaintiff presented evidence indicating that the officers exceeded the force that was reasonable under the circumstances, and this evidence is not blatantly contradicted by the record. Additionally, Plaintiff has adequately demonstrated on summary judgment that he sustained more than de minimis injuries. This is all that is required at this stage of the litigation, and it is not the Court's duty to weigh evidence or judge credibility.

### B.     Law Is Clearly Established

Upon Defendants' invocation of a defense of qualified immunity, Plaintiff acquired the additional burden of articulating specific case law to support his theory for relief. *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988) ("The plaintiff carries the burden of convincing the court that the law was clearly established."). In meeting this burden, "a plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." *Id*.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citation omitted). Accordingly, upon Defendants' invocation of qualified immunity, the burden fell on Plaintiff to cite "controlling

13

precedent demonstrating that a reasonable person in the position of these defendants would have known that their" actions violated the rights protected by the Fourth Amendment. *Pueblo Neighborhood Health Centers, Inc.*, 847 F.2d at 645. In his Response, Plaintiff cites to the following cases as providing clearly established law that Defendants violated his Fourth Amendment rights: *Graham v. Connor*, 490 U.S. 386 (1989); *Martinez v. California*, 444 U.S. 277, 285 (1980); *York v. City of Las Cruces*, 523 F.3d 1205, 1209–11 (10th Cir. 2008); *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993); *Austin v. Hamilton*, 945 F.2d 1155, 1157–58 (10th Cir. 1991); *Dixon v. Richer*, 922 F.2d 1456, 1463 (10th Cir. 1991); *Meade v. Grubbs*, 841 F.2d 1512 (10th Cir. 1988). These cases clearly establish the following legal principles.

At the time of Plaintiff's arrest, it was clearly established "that a claim of excessive force by officers in the course of an investigatory stop, arrest, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its standard of objective reasonableness under the circumstances." *Butler*, 992 F.2d at 1054. This standard is less onerous than the Fourteenth Amendment substantive due process standard applied to claims of post-arrest excessive force against pre-trial detainees. *Id.* Under the Fourth Amendment reasonableness standard, the Court must balance the level of intrusion to the detainee's Fourth Amendment rights against the government's interests. *Graham*, 922 F.2d at 396. Naturally, in any arrest, some level of force is acceptable: the Tenth Circuit's "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* Determining what level of force is appropriate, however, must be judged from "the perspective of a reasonable officer on the scene" without the benefit of hindsight. *Id.* Additionally, the Court's "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are

14

tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. *Id*. Thus, to demonstrate a Fourth Amendment violation, a plaintiff must show more than the use of violence by law enforcement; rather, the force must have been objectively unreasonable in the circumstances: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397.

This reasonableness test defies "precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Nevertheless, in excessive force cases, the Supreme Court has identified several factors the Court may consider in determining whether a particular application of force exceeded the bounds of reasonableness under the Fourth Amendment, "including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Applying these factors, the Tenth Circuit has concluded that assaultive conduct by law enforcement officers that exceeds those actions necessary to restrain a detainee, even one who may be violent or attempting to flee, is violative of the Fourth Amendment's protections against unreasonable seizures because it goes beyond what is reasonably necessary for officers to secure their own safety and that of the public. *See Cortez v. McCauley*, 478 F.3d 1108, (10th Cir. 2007) ("the officers involved should have known that they were permitted to use only as much force as was necessary to secure their own safety and maintain the status quo"); *Butler*, 992 F.2d at 1055 (concluding that evidentiary "showing was sufficient to support a claim of violation of clearly established law . . . so as to avoid a summary judgment . . . on qualified immunity" where plaintiff asserted in his deposition that after he was taken to the ground, officers "beat him with flashlights" for one minute and "kneed him in the groin"); *Dixon*, 922 F.2d at 1463 ("While it is

15

reasonable to frisk a detainee suspected of carrying a weapon, . . . it is not reasonable to hit him in the stomach with a flashlight, or choke and beat him, solely on the basis of that suspicion.").

In sum, the law prohibiting the use of excessive force during seizures of suspects is clearly established by Supreme Court and Tenth Circuit precedent such that it would have been apparent to a reasonable officer that he could not attack, mace, and beat a detainee upon learning that there was a warrant for his arrest, without the suspect at least trying to flea, violently resisting arrest, or taking some other action that placed the officers' or public's safety at risk.  Additionally, even where such safety concerns are present, once a suspect has been subdued and/or submitted to the officers' authority, they cannot continue to maliciously beat the suspect.  Thus, while a greater level of force is clearly justified to detain and subdue a dangerous or violent suspect, once the detainee has been subdued, there is no justification for continuing to beat or hit him, even a particularly dangerous or violent detainee.  The Court therefore concludes that the law in this area is clearly established, and the unlawfulness of Defendants' alleged actions in detaining Plaintiff would have been apparent to a reasonable officer on the scene.

### C. Genuine Issue of Material Fact

When qualified immunity is asserted, the plaintiff must carry a heavy two-part burden to demonstrate that the law is clearly established and present evidence demonstrating that the public officials violated this clearly established law.  Then, and only then, once the plaintiff has shown that the defendant is not entitled to qualified immunity, does the normal summary judgment burden apply, shifting the burden back to the defendant to demonstrate there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Butler*, 992 F.2d at 1054.

Defendants argue that the "mere existence of *some* alleged factual dispute" cannot defeat an "otherwise properly supported motion for summary judgment," *Anderson v. Liberty Lobby*, 477 U.S.

16

242, 247–48 (1986), and that, in the case at hand, there are no factual disputes that would affect the outcome of the suit. (Doc. 38 at 5.) In other words, Defendants argue that there is "no *genuine* issue of *material* fact" in the case at hand, and therefore, they are entitled to a judgment as a matter of law. *Id*. at 248. If the Court finds a genuine issue of material fact, however, that is the end of the matter because such factual disputes must be submitted to the jury. *Frohmader*, 958 F.2d at 1028 ("Courts may not resolve disputed questions of material fact in order to grant summary judgment.").

"A fact is 'material' if under the substantive law it could have an effect on the outcome of the lawsuit. An issue is 'genuine' if 'a rational jur[or] could find in favor of the nonmoving party on the evidence presented.' " *Adams*, 233 F.3d at 1246 (quoting *Equal Employment Opportunity Comm'n*, 220 F.3d at 1190). In the case at hand, there are several factual disputes that could have an effect on the outcome of the suit: (1) whether the deputies reasonably believed at the time of the arrest that Plaintiff was involved in the high-speed car chase, possessed a gun, was under the influence of drugs and alcohol, and was not taking his psychiatric prescriptions; (2) whether Plaintiff actively resisted arrest; (3) whether, at any time, Plaintiff submitted to the deputies; (4) whether Plaintiff attempted to flee; and (5) the seriousness of Plaintiff's injuries. These issues are "material" because they are determinative of whether the deputies application of force during the seizure was justified or excessive. For instance, if the deputies reasonably believed that Plaintiff had fled from them in a high-speed car chase the prior week, that he had a gun, that he was off his psychiatric medications, and that he was high on cocaine, heroine, marijuana, and alcohol, they were clearly justified in using a greater level of force to detain him. Similarly, if Plaintiff was actively resisting arrest or attempting to flee from the deputies, a greater level of force was justified under the circumstances. As the Fourth Amendment's reasonableness test is a highly fact intensive inquiry, the details of the seizure, which are contested by the parties, are material in determining whether the

17

quantum of force applied was justified under the circumstances.

Furthermore, the dispute is "genuine" because it is plausible that a rational trier of fact could find for Plaintiff on one or more of these issues. In deciding a motion for summary judgment, the trial court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the non-moving party." *Simms*, 165 F.3d at 1326. It is not the Court's job to weigh the evidence or judge the credibility of the witnesses. *Frohmader*, 958 F.2d at 1028 ("Courts may not resolve disputed questions of material fact in order to grant summary judgment."). A jury may later find that Plaintiff was actively resisting arrest and attempting to flee from the officers, and therefore, Defendants did not use excessive force; but, these determinations are the exclusive province of a jury to make. As Plaintiff's factual assertions are not "blatantly contradicted" by the record on summary judgment, the Court must accept them as true. *Scott*, 550 U.S. at 380. Consequently, the Court concludes that there exist genuine issues of material fact which preclude summary judgment.

## V.     CONCLUSION

Defendants filed a Motion for Summary Judgement Based on Qualified Immunity (Doc. 38), arguing that they are entitled to qualified immunity because Plaintiff cannot present sufficient evidence to show that Defendants violated clearly established Fourth Amendment law prohibiting the use of excessive force during an arrest. Plaintiff filed a Response to Defendants' Motion for Summary Judgment, arguing that summary judgment is inappropriate because Defendants are not entitled to qualified immunity and there exist genuine issues of material fact that should be determined by a jury rather than the Court. (Doc. 42.) Defendants filed a Reply, arguing that Plaintiff failed to demonstrate a genuine issue of material fact, and therefore, Defendants are entitled to judgment as a matter of law. (Doc. 45.)

On a motion for summary judgment, when a defendant asserts qualified immunity, the

plaintiff bears a heavy two-part burden to demonstrate (1) that Defendants' actions violated a constitutional right, and (2) that the constitutional right was clearly established at the time of the incident. Once the plaintiff has met this initial two-part burden, the defendant must then demonstrate that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. Plaintiff met his initial burden, presenting sufficient evidence and case law on summary judgment to show a violation of a clearly established constitutional right. Therefore, the Court concludes Defendants are not entitled to qualified immunity.

The burden then shifted to Defendants, who failed to meet their burden to show there were no genuine issues of material fact precluding summary judgment. Having looked at the depositions, pleadings, and other documents that make up the summary judgment record, there clearly exist many factual disagreements in this case that could potentially affect its outcome. Accordingly, the disputes are material. Furthermore, as Plaintiff's assertions are not "blatantly contradicted," the Court must accept that a rational jury could find in favor of Plaintiff on the evidence presented. Thus, the disputes are genuine. Consequently, the Court concludes that summary judgment is inappropriate because there exist genuine issues of material fact.

**WHEREFORE**, the Court hereby **DENIES** Defendants' Motion for Summary Judgment Based on Qualified Immunity. (Doc. 38.)

_____
**ROBERT BRACK**
**UNITED STATES DISTRICT JUDGE**